25-5532 USA v. Prisiliano SolisRoblero Argument not to exceed 15 minutes per side. Ms. Rust, you may proceed. May it please the Court, I'm Erin Rust, I represent Mr. SolisRoblero and I would like to reserve three minutes for rebuttal. Fine. The Third Circuit is correct. The term commencement of the instant offense unambiguously excludes relevant conduct. It is limited to the conduct that establishes the elements of the specific defendant's offense. And the government has not once contested this reality, not before the District Court and not before this Court. Its sole contention is that the found-in version of a legal reentry under 1326 is a continuing offense that starts at the initial entry and concludes when the individual is found by immigration authorities. Setting aside my concerns about whether or not that conclusion is accurate, even if the found-in version of a legal reentry constitutes a continuing offense, even the government's cases conclude that the entry is not an element and that the entry is relevant conduct to the crime of being found in. So the Seventh Circuit, a case cited by the government, holds that the point of the found language in the statute is to avoid the need for the government to prove when and where one entered. The Third Circuit concluded that it is a continuing offense, but that the relevant conduct of entering the United States should be considered in determining when the offense began because the commentary to 4A.1.2 includes relevant conduct when it is expanding the unambiguous term commencement of the instant offense. What's the sentencing range if we adopt your position here? Oh, Your Honor, I don't have that memorized off the top of my head. He was sentenced to the statutory maximum, which was 24 months. It seems to me that he might have gotten the same thing, but you don't know. I don't, Your Honor, although I can say that guideline errors are almost always prejudicial because the guidelines are the foundation, they are the lodestar of the judge's sentencing determination. And there's no indication in the record that the court automatically would have given him 24 months had the guideline range been lowered. My notes say 21 to 24 months. I think that's from the briefing. Thank you, Your Honor. So to get to the key issue, you're challenging 4A.1.2e2, and how it impacts, which says that the prior sentences are included in the criminal history calculation if, and now I'm quoting, prior sentences were imposed within 10 years of the defendant's commencement of the instant offense. And so what I wonder is whether we are limited by the terms that the defendant agreed to in the plea bargain, which said that he was found, he pleaded guilty to an offense that commenced on February 5th, 2025, which would be outside the relevant 10-year period. So should the terms of the plea agreement that he signed be the key as to when the offense occurred, or should it be the indictment or something else? Yes, Your Honor. The factual basis that was agreed to by both parties in the plea agreement as establishing the facts that established the conviction, that is what controls the analysis here. The term commencement of the instant offense, what is the instant offense? That is limited to the facts and the conduct that were charged and proven as part of the defendant's offense. What did this individual defendant admit? He admitted he was here on February 5th. He also admitted that he reentered without giving a particular date. Yes, that's true, Your Honor. So why does that particular detail need to be in either the indictment or the plea? Why can't that be something that the district court finds by preponderance of the evidence? Well, that goes back to what is the meaning of instant offense in the guidelines. And the guidelines are clear that it is limited to the facts that establish the elements of the conviction. It does not include relevant conduct. Why doesn't that go back to kind of where you started us with a continuous offense, right? You said, I think I understood you to say, you can win even if this is kind of a continuing offense, right? So let's take, if this is a continuing offense that starts when the defendant reentered, which the plea doesn't give us a date for, this is in little three in subsection three of the plea, right? If it starts then and we have no date and he's found on February 5th, why can't the judge find when that commencement is, the beginning of the continuing offense? Or quite frankly, maybe he doesn't find the exact beginning, but finds we know it's at least by X date. Because that fact is relevant conduct, because it was not part of the facts that were admitted by the defendant as part of his guilty plea. So anything, so to figure out commencement, the judge has no ability to look at anything besides for what's in the plea? Yes, Your Honor, that's correct. The judge is limited to the facts that were established to form the conviction. And in a plea agreement situation, those facts are agreed to, they are stipulated to by the parties. And here the fact was limited to the February 5th date. So looking beyond that February 5th date is by definition looking to relevant conduct. And that is essentially what the cases that the government relies on have already held in circuits where they have concluded that the found inversion of a legal reentry is a continuing offense. They still found that they could look to the relevant conduct of entry, of when the defendant entered, because of the commentary to the guideline. Not because that was an essential fact to the conviction itself. In fact, it's quite the opposite. The courts hold the date of entry, the time of entry, the length of entry is not essential to the conviction. It doesn't matter for the guilty plea or even for trial. What matters is the founding date. What matters for this plea in this particular case was the single date of February 5th. So if, under your theory, if the plea agreement had said that the defendant admits that he was found in 2021, which is when there was some other court case involving him, but that also says he was found on February 5th for purposes of this case, but if both dates are in the plea agreement, then would you agree that we could include the 2021 date as opposed to just this February 5th date? Yes, Your Honor. I think certainly if the defendant, if the factual basis for his guilty plea was that he was found in the United States from October 21st or October 24th of 2021 and continued to be in the United States until he was found on February 5th, yes, I think then absolutely the fact that is establishing his conviction is the fact that he was here in the United States on the date of October 2021. So would he have to say he was continuing to stay in the U.S.? But in my hypo, the plea agreement states he was in the U.S. in 2021 and he was in the U.S. on this date, February 5th. Would the district judge be able to look back 10 years from 2021? I think, Your Honor, that certainly is a much more difficult question than the case that's presented here, especially because this court has not decided the very specific element. I do think that if the plea agreement said that the defendant admitted his presence in October of 2021, I think it does matter that it is consistent presence, that he would admit that he was continuously here until the found-in date. But if the defendant admitted that in the plea agreement, then yes, I do think the court could start the date from October 21st of 2021. And the consistent in the country aspect would be because it's the offense. The offense of conviction is the offense of entering and remaining in the U.S.? If the entry matters at all to the found-in version of a legal reentry, then it matters when he entered. If it doesn't, then it doesn't need to be continuous. I'm not sure I said that very clearly. But if the thinking is that this is a continuing offense that starts from the date of entry, then it matters that he was continuously in the United States from a specific date. Because if he – I'm talking hypos now, but suppose the person comes into the U.S. in 1990 without papers, goes back and forth to another country during that period, we would not be able to say it was a continuing offense from 1990 when he came in. We'd need to look more when he is found without having come in with proper papers. Correct, Your Honor. And that is the whole point of the found-in language in the statute is that it removes the government's burden of proving that an individual was in the United States for an extended period of time. All that matters for the conviction is that the defendant was found on a specific date that occurred after he was previously deported. Reading the guideline section itself and the word commencement, why if the government wanted to rely on these earlier convictions, the United States and like that, why would they need to resort to the commentary? Why can't they just resort to the word commencement itself? That's in the guidelines that – because you invoked Havis and kind of our cases that talk about, oh, and the guideline is expansive or changing and things like that. But the word commencement is itself in the guideline. And I at least read the judge here to say, well, I can look to commencement then. To the extent it's a continuing offense, which I know you are arguing both sides on, but are arguing in the alternative. But why can't the judges rely on the guideline to make that determination? The guideline term is commencement of the instant offense. So it's not commencement in the abstract. It's commencement of something. What is it that is being commenced? It's the instant offense. And the instant offense in the guidelines is narrower than offense. So offense, the commission defined the term offense as including the offense of conviction as well as relevant conduct. So by using the term instant to modify the term offense, the commission has narrowed the conduct that we're talking about to the specific conduct that underlies the offense of conviction. And commencement is necessarily tied to instant offense. But if we see the instant offense as a continuing one starting from when he reentered, what prevents the judge from making that fact finding? Because it still must be based on the facts that established the elements in the specific case in front of us. And the facts that established those elements in this case was limited to a single date. Again, if the parties wanted to agree, if the government was very intent on wanting that look-back window to go back an extra five, ten years, the government could have insisted that my client admit he was in the United States from October of 2021 through the date he was found. That's not what the parties agreed to. That's not the fact that is the basis of the conviction in this case. So hypothetically, if your client had been in the U.S. in October 2021, which it appears is the case, and then had gone back out of the United States and then had come back into the United States, and the plea bargain says April of 2025 as the date, would that be then impossible to rely on October 2021 because of the fact that I am hypothesizing now that we know that he hypothetically went back to his country and then came later post-October 2021? Because it would be a new offense, right? As opposed to a continuing offense under my elaborate unclear hypo. It would be two separate. If we're assuming that it is a continuing offense, they would be two separate continuing offenses, not one single. In this long hypo, he would be pleading to the April 2025 thing, but he could hypothetically have been charged also with a separate offense of illegal reentry and remaining based on my hypo, where he was found in October of 2021, but went home and then came back. Yes, I think that's correct, Your Honor. Any further questions? Thank you. Good morning. May it please the Court. My name is Luke McLaurin, and I'm here on behalf of the United States. Contrary to what my friend has suggested, this case is not about relevant conduct. Rather, the question presented by this case is, when does a found-in violation of 8 U.S.C. Section 1326 commence? The statute's text, its context, and the interpretive history of it provided by every other circuit in the country provides a very clear answer to that question. The offense starts on the date the alien illegally reenters the United States and continues until the alien is discovered by immigration authorities. And that's, I think, clearest from the text. There's been a lot of discussion of the term found and the people doing the finding, but the text applies to an alien who is at any time found in. And as the Fourth Circuit recognized in its recent Ionbrito decision, and as dictionary definitions tell us, when found is used in that passive sense, what its meaning is is present in or is located at. And that's the way that every circuit has interpreted this language, for good reason. The offense is designed to criminalize being present in the United States after having been deported. And the statute criminalizes three different types of things. It criminalizes reentering, attempting to reenter, and then being present in after reentry because it's meant to be a comprehensive thing that covers this whole swath of conduct. In my hypo, where hypothetically he was deported, he came back in 2021, and we know he came back because he was charged with some crime at that point. Then he leaves the U.S., comes back again, and is found and agrees now that he was found on April 5th of 2025. Would there be two crimes or one crime? Yes, that's right. There would be two crimes. And that's why there was a discussion at the sentencing here when the court was making the factual finding, as it always does with these guidelines and enhancements. It was making a factual finding. And Judge Collier was very clear, and he was looking at the facts. He's like, is there any evidence that we know he was in the country on October 21. Is there any evidence he left? Is there anything to suggest that he left? And there was no evidence. In fact, the evidence in the PSR suggested that he had been here continuously. He committed another offense in Georgia. He admitted to the probation officers in paragraph 56 of the PSR that he had been living at that house with his family in Chattanooga. He said he'd been living there for 10 years. That suggests that he had been sort of continuously there. So all the available evidence to the district court indicated that his presence had been continuous from October 21. That's why it made that factual finding. And that factual finding would only be reviewed for clear error. And as I understand it, the defendant has not challenged that factual finding. It's undisputed. It wasn't disputed below that he was in the country since October of 2021. But why shouldn't we rely on the plea bargain language itself, where he specified and you specified the date of April 2025? Let me give you a couple of reasons. One is, as a factual matter, if you just look at the language of the plea agreement itself, the language preceding the factual basis is very clear that these are not all the facts. And it specifically says other facts may be relevant in sentencing. And the United States retains the right to present additional facts to the court to ensure a fair and appropriate sentence. So by the terms of the plea agreement itself, the parties were not saying, hey, these are all the whole universe of facts that's going to be relevant for sentencing. So that's the factual response. The other is the legal response. Courts never look at it this way. I mean, I can point you to a case that we cited in our brief, the Jimenez case, the Sixth Circuit case. I mean, that involved the same kind of situation. And the court was not saying, hey, I'm limited to what's listed in the indictment. And that's consistent with how courts have always approached this guidelines provision. If I may, I would like to point, just simply because this directly addresses the question you've asked, Judge Moore, there are two cases we did not cite in our brief. They are referenced in a case that was cited in our brief. But there are two cases that are directly on point here. One is United States v. Caifas. That's 957 F. 2nd, 677. It's from the Ninth Circuit from 1992. And the second case is United States v. Kennedy, 32 F. 3rd, 876. That's a Fourth Circuit case from 1994. Both of those cases involved a situation where the court was being asked at sentencing to determine when the offense commenced. And they both involved continuing offenses. The Caifas case involved possession of counterfeit Federal Reserve notes. And the other court said, look, we're not bound by the fact that the indictment says he possessed them on or about the date when he was discovered having this house because he admitted that he possessed them from the time he created them. And so we can look back to the time that he created them as the start date of his offense. In the Kennedy case, it involved a conspiracy. And the indictment had alleged specific dates for the conspiracy. But the evidence that came out at trial showed that the conspiracy had actually been going on since before the dates alleged in the indictment. And there, the Fourth Circuit reversed the district court and said, no, the district court, when it said that it was limited to the dates in the indictment, that's wrong, that the court can look at the actual facts and make a factual finding as to when this offense commenced. And for a continuing offense, it can go on for a long period of time, so it can commence earlier than what's listed in the indictment. So our key features, then, in your interpretation here, the plea bargain has the particular date, which is a later date, April of 2025. But is the key, then, what facts show up in the course of preparing the PSR and the sentencing hearing in front of the district judge as to when you would say the offense commenced? And you're relying on this fact that he had this other criminal case in October of 2021, and then that there's nothing to show that he departed in between the 2021 and the 2025? Yes, we think that the facts, I mean, this is typical for how you do any sort of guidelines issue, is there are facts that are going to come out at sentencing. That's because indictments, they're focused on the elements of the offense, and the date is often not an element of the offense. The reason that the found date is important for, and why it's usually included in indictments for this offense, is because that's what triggers the statute of limitations running. And so it's important to make sure that that is listed, so that you can make sure that the offense is being charged in a timely fashion. But it doesn't, just because that's the date that's listed in the indictment, doesn't mean it's the sort of universe of when the offense commenced. It's certainly an important date because it's a date that matters for statute of limitations purposes, and under the interpretation of other courts, it's essentially the date when the offense ends when he's discovered. But it's not the date when the offense begins. And so we think it is important. You're absolutely right, Judge Moore. What we think is important here are the facts that come out at sentencing, which is always the case with guidelines enhancements. You said the offense ends on the April 25th. I think it was February 5th when he was discovered by the immigration authorities. I think that's what the case law has said, that the offense starts there and it ends. I think it ends in the sense that that's when you start counting the statute of limitations. Obviously, he's still present in the country illegally, but at that point he's been found and he's being charged and the criminal proceedings are commencing. Did the court sentence the defendant under the plea agreement? He was sentenced under the plea agreement, right? Yeah, he was sentenced based on his plea to this offense. And as Judge Bloomcast noted, in the plea agreement he did admit that he reentered. He didn't specify when he reentered. How would it change it if he prevails here? Are you asking what the guidelines range would be? To me, it's not any different. Practically speaking, it probably wouldn't be much different. His guidelines range was limited to 24 months under the district court's calculations. Under his calculations, he would have had a guidelines range of 21 to 24 months. Theoretically, the judge might have sentenced him to something lesser, although if you look at Judge Collier's explanation, it's pretty clear that he thought 24 months was appropriate because this defendant has illegally reentered the United States multiple times and this is not his first go around. So it's unclear as a practical matter how much difference it would have made, but yes, his guidelines range would have been different under his interpretation. But again, this was a factual question the district court was asked to resolve, is when did he reenter? And this comes up in these cases. You saw it in Jimenez in that case. That was the whole dispute there. It was about the fact finding that was made at the district court level. And it is going to be the case that sometimes the government is not going to be able to show by preponderance the evidence that the offense started as early as X date, that they won't be able to establish. That's just going to be the case in some cases. So from your perspective, you just said the district court had to decide when did he reenter. When did he reenter according to the district judge? Well, he had to decide when the offense commenced, and I don't think the district judge knew exactly when he reentered, but the court was certain that he had been in the country since at least October 24th of 2021 because he was caught assaulting his girlfriend at that point. So the court said, look, we know he was here from at least October 24th, 2021, so the offense had started by at least that date, so we can use that date for the look back provision. I understood your friend is arguing that there was kind of a limitation on what the judge could look at by the word kind of instant offense in the actual guidelines provision that says the commencement of the instant offense, and that kind of there was a little bit of a break between instant offense being what's in the plea and other things that are kind of beyond the plea being relevant conduct, which was off limits. And I'm kind of curious what you make of the language and what counts as relevant conduct, what counts as the instant offense. Well, I think the, of course, relevant conduct includes the instant offense. I mean, the definition of relevant conduct includes all acts committed by the defendant. I think the parts of relevant conduct that would seem problematic that might be outside of instant offense would be other offenses, right, because the definition of relevant conduct also includes things like, in the case of jointly undertaking criminal activity, includes things like things done in preparation for or in the course of avoiding detection. Also, it includes, the definition of relevant conduct includes things that were part of the same course of conduct or a common scheme or plan, so that could include other offenses, like other criminal offenses might count as relevant conduct. Here, though, when you have a continuing offense, things that are just, other offenses, they're just part of the same offense. So I don't think they're outside of the instant offense. They're just part of the instant offense. The instant offense just happens to be something that goes on for a lengthy period of time. A great example is a conspiracy, right? A drug trafficking conspiracy can go on for years. And there's a whole bunch of conduct that can be part of the conspiracy. Now, there can also be other criminal conduct that was maybe not part of the conspiracy, but that's part of a common scheme or plan that gets swooped in by the relevant conduct definition. But the whole conspiracy, that is the instant offense. If that's what they were, if that's what they pled guilty to, a conspiracy, that's the offense. And here, the offense was the found invariant, which is being present in the United States without authorization after removal. And that was going on for an extended period of time. So the court didn't need to look at relevant conduct to get to the fact that October 2021 was part of the instant offense. So would you agree, then, that if the facts that were presented to the district court included that he had left the U.S. between October of 21 and February of 25 and then had come back, that that would not be one continuing offense, that would be two separate offenses? Absolutely, Judge Moore. And I think that's why you saw Judge Collier focus so much on that question, is there any evidence here, because he was trying to figure out, has he continuously been here? And based on the evidence presented, undisputed evidence that was presented, he found that he had been here continuously. So if it were two separate offenses, then it would have been incorrect to add the enhancement under this particular provision of 4A. But he could have been theoretically charged with a second separate offense? So my answer to the first question is going to be no, simply because we do not, while we don't ask this court to decide the issue about relevant conduct, we do not concede the point that we don't concede that Josie was correctly decided. It's hard for relevant conduct. Yeah. It would have been incorrect. Yes, yes. Okay. And just to clarify, the government's position, we do not concede that Josie was correctly decided. We just don't think that the court needs to address that issue in this case. And just one other point, since it hasn't already been brought to the court's attention, to the extent that the court does believe that it needs to address this relevant conduct question, we think it would be premature to do so at this time, because on Monday, the Supreme Court granted certiorari in a case that specifically raises the question of what level of deference is owed to guidelines commentary. And so the Supreme Court is about to consider that issue. The case is Beard v. United States, 21-10764. Just granted cert on Monday. So, again, to the extent the court feels like it needs to address that question, we think it would be premature to do so at this time, and we would ask that the case be held in abeyance pending the decision in Beard. But we don't think the court needs to address that question, because this is included in the instant offense. I see my time has elapsed. Unless there are any other questions, we'll rest on our briefs. Thank you. Excuse me. Your Honors, elements establish convictions. Relevant conduct establishes sentences. What matters when we are looking at the offense of conviction are the elements and the facts that establish those elements. This court has held essentially that in the case United States v. Redmond, when it limited the term offense of conviction to elements, and the Josie Court held the same when it decided this exact question. In the plea agreement, the parties agreed to the facts that established the elements of Mr. Solis for Bolero's conviction. Those are the only facts that the court can look at when determining the commencement of the instant offense. That is true regardless of whether or not it is a continuing offense, and we can see that in other continuing offenses, such as somebody who's a felon in possession of a firearm. The whole time he possesses the firearm, that is part of a single continuing offense. But when that individual, so if that individual possesses a firearm on days one through five, that is a single continuing offense. He got what he bargained for, though, didn't he? He got sentenced under the plea agreement, right? He got sentenced. The plea agreement did not have a set agreement as to what the guideline range would be. The plea agreement agreed to the facts that established the elements of the offense. If it goes back down, what do you propose the elements be on that plea agreement? The elements would be the same, but the guideline range would be lower, and by lowering the guideline range, that lowers the starting point for the courts to decide what the sentence should be. The two years would still be possible? Yes, Your Honor, the two years would still be possible. Returning to the felon in possession of a firearm example, so if a defendant possesses a firearm on days one through five, that is a single continuing offense. But if the defendant and the government agreed in a plea agreement that the facts that established the offense of his conviction were that he possessed the firearm on day five, no one would say that he was convicted of possessing the firearm on day one. Any facts that were related to his possession of that firearm in between days one and five might very well come in as relevant conduct because it is a single ongoing offense. But that is different from what are the elements that he pled guilty to. It's different from the offense of conviction, and it's also different from the instant offense, which is a term that the guidelines use interchangeably with offense of conviction throughout, and it's also a term that the Josie Court held has the same meaning as offense of conviction, which is limited to the facts that establish the elements. I see that my time is up. We would ask for a remand. Thank you. Thank you both for the argument. The case will be submitted.